Two of the cases this morning have been adjourned in view of the death of a family. We'll hear Ritchie v. Taylor. Good morning. Good morning, Judge. Might please the Court. My name is Krishna Chittoor. I appear for Ms. Patricia Ritchie. I begin first by addressing the credit reporting statute claims. That is the one under New York Federal Credit Reporting and under the Federal Credit Reporting Act. The lower court held that Section 380BB was preempted by the FCRA, and we believe that decision is directly contrary to the only two courts of appeals that have considered this issue. Now, this issue was actually conceded by both sides before the lower court, but nevertheless, the lower court went on by itself and made a decision that 380BB was preempted. And in doing so, we believe the lower court made a very, very fundamental error, and the fundamental error was this. There are two different provisions in the FCRA concerning preemption. There is 1681TA and there is 1681TB. TA has a very limited preemption. It provides that state laws are not preempted except to the extent of inconsistency, and even then only to the extent of such inconsistency. So that's a limited preemption provision. TB, on the other hand, provides a much larger preemption. Now, the lower court did not consider TA at all, and it is crystal clear that 380BB is covered by TA. Because 380, what does 380BB say? 380BB says that you have to give advance notice before you pull somebody's credit report, you have to give advance notice to the consumer. That's what 380BB says. Now, the statute provides that if it is concerning the collection. Which statute are we talking about? 15 U.S.C. 1681TA. Okay? And I quote, except as provided in subsections B and C. Are you arguing for liability under state law? I'm sorry? Are you arguing for liability under state law? That is correct. Okay. So it's the state law claims that you're arguing. Correct. I'm on the state law claim because there is no question, it is undisputed that they never gave notice under 380BB. Well, put that aside. I mean, the defendants argued in the district court that the state law only protects New York residents. It's not a protection of anybody who does business in New York. Well, that issue has been addressed by Judge Roman in the Agaipur case. That argument is based on nothing more than an isolated statement in the legislative history of 1969. The argument was made and the district court ruled against you on that, right? No, the district court did not rule on that, Judge. The district court did not rule on that. On the issue that New York Credit Reporting Act applies only to New York residents, on that issue, number one, the argument is based upon isolated words in the legislative history, number one. Number two, as Judge Roman held in the Agaipur case after an extensive analysis of the statute and legislative history and all that, he said the statute doesn't say that. It does not restrict itself to its application. May I ask you, it seems to me that you're focusing on the tail wagging the dog here. If we were to conclude that the credit reports were used for a legitimate purpose, that there's nothing to that part of your argument, but that you didn't get the notice each of the four times they accessed the report, what's your client looking for here? She would be looking at significant damages, Judge. I'm sorry, I didn't hear you. What kind of damages? She would be looking for significant damages. What significant damages if it was used for a legitimate purpose? Well, firstly, let's begin at the beginning. It is conceded that the lease was forged. There is no question that the lease was forged. These are other claims. Assume they all fail for whatever reason. What's the injury from the not getting notice on the four times it was accessed, which is what you've devoted most of your argument to. I'm just trying to figure it out. What is it your client would be seeking? Had she received the notice, she would have informed them right away that this is a forgery. Your client ignored lots of phone calls and other things, so whether you could succeed on that is not. I'm asking you to assume that we find that none of those other claims survived, but, you know, she didn't get the notice. What's the damage? Judge, all those areas where she did not respond to the phone calls and letters were after she got overwhelmed with personal problems. That was not at the time that she was starting the business. If she had received the notice. All right. Go ahead. Let me let you finish your argument. If she had received the notice at the time that she was supposed to, which is at the first time that they went in to pull her credit report, she would have immediately informed them that this is a forged lease. I don't know who you guys are. Why is that? The notices were accessing your credit report. How that would have told her, you know, tell them that the lease is not valid is not apparent to me. That would have triggered an inquiry, Judge. She would have said, who are you and why are you doing this? I don't know you guys. She said that right up front. She said, I don't even know who these people are. She assumed all along that she was dealing with the merchant services who gave her a cancelable lease, and then these people come and they've. You filled out an application. I'm sorry? You filled out an application for something that entails your good credit. Why wouldn't you expect people to check your credit? I don't know. She may. She filled out an application with respect to MME. That is correct. But that application was different in two extremely material respect, and that in my humble submission, that is. I don't. It may be different. It may be the same. It's an application. It's an application for a credit-based transaction. Why would she object to or be surprised that anybody is checking her credit rating? That she authorized MME to look up a credit report, and I'm not sure she did, but even assuming she did, that doesn't authorize them to come and pull out her credit report. She may fill out many applications with many people. The question here is whether these people had the right to bring a lawsuit for $3,000 in the New York City Civil Court against her. That's the question. Does the New York law require that one have suffered damage in order to have a claim based on it? No. There is statutory liability and statutory damages, yes. Because in the ordinary instance, one would not suffer damage just from not having been notified of the pulling of a credit report. That may be true or may not be true. It depends. Yes, yes. That is possible. It was certainly an argument, and I wonder whether you were making it in response to Judge Radji's question, that even if she didn't suffer damage, she has a claim entitled to nominal damages. I don't know. Do you have any information on that, any precedent or anything like that? Unfortunately, there are not too many precedents under the New York Fair Credit Reporting Act. So to a great extent, your Honors are riding on a clean slate. I wasn't suggesting that you didn't have a claim. I was asking you what damages you were looking for. The statute itself, does it provide statutory damages? I believe so, yes. How much? Fifty dollars, plus attorney's fees. For each access that's not noticed. Fifty dollars are actual damages. But you're not limiting. You're not saying that you're just limiting it to the statutory. Correct. Okay. Thank you. Now, when your client was welcomed to this program, didn't your client receive a copy of the signed contract with the forged signature? Not to her knowledge. Not to her knowledge. She did not receive that. I thought the record was, though, that she did not deny having received the contract. She didn't recall it because, you know, it was just . . .  The record we have is the other side saying that the contract was sent to her, and her saying, I can't say yes or no on that. That is correct. That's the record we have. Correct. Okay. That is correct. Now, look at it from . . . The federal law, it seems to me that there's an important point here, which is the preemption issue. The federal law provides expressly for preemption of any state regulation with respect to the same subject as the federal regulation. The federal regulation requires the giving of notice in any instance in which somebody takes an adverse credit action based on information in a credit report, if I understand correctly. And the state requirement requires the giving of notice any time one pulls the credit report and one pulls it for the purpose of deciding whether to give favorable or unfavorable, take favorable or unfavorable action based on the information in the credit report. Now, what is your argument? Why doesn't the state regulation concern essentially the same subject matter as the federal regulation and therefore be preempted by it when the federal regulation so expressly focuses on that and says we're not going to have any . . . As to this particular regulation, we're not going to have any state regulation on the same subject matter. With due respect, Judge, that's not the case. As I was pointing out, Section 1681 TA is the one that covers the notice provision. TB is the one that Your Honor is referring to. That is the one that covers the adverse action notice provision. Now, the situation is TA says . . . TA is a limited preemption provision which covers the laws of any state with respect to the collection, distribution, or use of information. And what we are concerned here is collection of information directly covered by TA. Now, there are two circuit courts that have considered this issue, the Eighth Circuit and the Ninth Circuit. In the Ninth Circuit, in the Davenport case which is cited in our brief, the Minnesota statute imposed a regulation exactly like 380 BB on insurers and said before an insurer pulls a credit report, he will give notice. Okay? And the precise challenge that is raised here was raised there, that this is preempted. And the . . . I'm sorry, that was the . . . That is Davenport, I'm sorry, Eighth Circuit. And the court said, and I quote, the Minnesota statute's requirement that insurance companies notify consumers before collecting their personal information does not conflict with the FCRA and is consistent with several FTC commentary regarding supplemental state laws. We therefore find that MIFIRA's notice provisions are not preempted by the FCRA. Does not conflict is not the standard. Does not conflict would be the standard for any of the other provisions of federal law. But for this particular one, I mean, other provisions of the federal statute, but as to this one, the federal statute doesn't use the question of inconsistency. It uses anything that relates to it, anything that is with respect to it. With due respect, Judge, I believe the federal statute says precisely that. Here's what it says. It says except to the extent that those laws are inconsistent with any provision of this chapter and then only to the extent of such inconsistency. Now, the FTC, CFP, everybody is uniformly held. This means that complying with state law would involve a violation of the federal law. It is only in that circumstance that the statute will be preempted. If it is not a violation of federal law, then it will not be preempted. For example, in the credit data case, the credit data — You're reading a different provision. 1681TB1C says no requirement or prohibition may be imposed under the laws of any state with respect to any subject matter regulated under subsection A and B of 1681M, relating to the duties of a person who takes adverse action with respect to — Correct. 1681M deals with the situation where the furnisher pulls a credit report. It's a post-pull obligation. Pulls a credit report and then makes an adverse determination. In other words, does not give the loan as sought for by the — So this is the situation where they pull the credit report to decide whether or not to take an adverse action. No, this is a collection provision. If Your Honor sees the two statutes, read the two provisions together. Subsection A deals with collection, distribution of use. B — I'm just saying the circumstance of our case — Correct. — is covered by New York law, is a circumstance of somebody who pulls a credit report in order to decide whether to use the information in it to take an adverse action. Well, whether to use the information is the second question. The first question is collection. They're collecting the information. Now, in the credit data case, for example, the statute went even further. The federal statute said that the furnisher may impose a reasonable charge in case a credit report is sought where the adverse action is taken and the credit report is sought 30 days later. So the federal statute was permissive. It said you may impose. Okay? The state statute said, no, you may not impose any charges whatsoever. Nevertheless, the credit data, the Ninth Circuit — Your Honor, you are arguing again that the two are not inconsistent. And the issue is not whether they're consistent. The issue is whether they deal with the same subject matter. If they deal with the same subject matter, it's preempted. And you're saying that it's different in various respects, and it may be. And it may or it may be that they are compatible. But the question is whether the state law is enforceable if it's dealing with the same subject matter as the state law, as the federal statute. Well, that is to accept that here you've got to give some meaning to all words in the statute. What would be the meaning of the word collection in 1681 TA? That means precisely what happened here. That is exactly what happened here. They collected the credit report. So 1681 TA, the limited preemption provision is the one that applies in here. And in the credit data case, the courts — here, let me — permit me to read from that decision. This is a Ninth Circuit credit — We have the cites, and we can read the cases. You've reserved a couple minutes rebuttal. Yes. We'll hear from your adversary. Good morning. Good morning, Your Honors. May it please the Court. My name is Thomas J. Cavalier of Cahill, Gordon, and Rydell, and I appear on behalf of all the respondents. Let me start with three bullet points. The answer to your question, Judge Jacobs, is on page 39 of Judge Forrest's opinion, which is A81 in the appendix. She said, quote, Precisely as you asked, Judge Jacobs. Judge Raggi, you asked the question, the answer to which appears at page A588. Let me read you a sentence. This is the document that Ms. Ritchie agrees that she signed. This is the application, she says, for a lease from a different lessor. Whatever else may be true about this document, it contains the following language. It says, to investigate the individual business history of applicant and each representative signing the agreement, including yourself, including investigative credit reports, in order to evaluate acceptability into the Wells Fargo Merchant Services Merchant Program and, if accepted, to conduct further investigations from time to time thereafter and to report credit information to others. That's called furnishing. Reporting credit information to others is furnishing. This is a case involving furnishing. I'm amazed that Mr. Chatur is able to get through this entire argument, to your point, Judge LaValle, without discussing this Court's decision in Galper, the Second Circuit decision in 2015, precisely on point. He cites a Ninth Circuit decision and an Eighth Circuit decision. I don't need to tell this Court the law is sometimes different in the Ninth Circuit than it is here. In this Court, there's no question in my mind that you're going to follow Galper, and the only question is, what does Galper say? And, Judge LaValle, you asked, I think, the absolutely right question. This is not a case of anything other than statutory preemption. Congress said the following shall be preempted. And in Galper, this Court was asked, how do you do that? How do you interpret that? And if you look at Galper, this Court first said, we look at the Supreme Court's learning, which, not surprisingly, is you read the statute to try to ascertain Congress's intent. And then what this Court said is, according to the Supreme Court, they're quoting a case called Dan's City Used Cars, a claim is, quote, with respect to, close quote, a preempted subject matter when it concerns the subject matter. I believe those are the words you used, Judge LaValle. And they say, accordingly, we hold that 1681TB1F preempts only those claims that concern a furnisher's responsibilities. Now, in Galper, it was not a furnisher. Here, we are a furnisher. And then this Court said, that statute does not preempt state law claims against a defendant who happens to be a furnisher of information to a consumer reporting agency within the meaning of the FRA if the claims against the defendant do not also concern the defendant's legal responsibilities as a furnisher of information. That's this case. And finally, this Court said, penultimately, this Court said, the question, then, is this. Do Galper claims against Chase concern, the word is concern, Chase's responsibilities as a furnisher of information under the FCRA? Whether they did or didn't in Galper as to Chase, they did not. Here, they do. Mr. Chatur says in page one of his brief, one of the questions presented is, does a furnisher? There's no question. The theory of his case is we're a furnisher of information. And that's how Judge Forrest understood it. And finally, on the last page of the opinion. Wait, wait. A furnisher. The liability he's seeking to impose under New York law is for taking adverse action based on information, I'm sorry, is for pulling a credit report without giving notice. My point is. Why does that make them a furnisher? No, no, that doesn't make them a furnisher. They are a furnisher. The statute we're talking about addresses itself to the subject of notice. And Mr. Chatur says you have to have inconsistencies. This Court says, no, it has to be the same subject matter. You don't have to have inconsistencies. Exactly right. By the way, there are inconsistencies if you did have to have them. But here, the subject we're talking about is notice. The federal statute addresses notice. The federal statute has a statutory preemption formula. The Supreme Court and this Court have said the way you apply that formula is you look to see if it is the same subject matter, federal and state. The federal statute addresses notice. The state statute addresses notice. Well, that's one way of looking at it. I'm sorry, that's the way this Court looked at it in Galper. Yes, but, I mean, it's a question of how broadly or narrowly you identify the concern of the federal statute and of the state statute. And the contrary argument would be that the federal statute is about the notice that must be given when somebody takes adverse action based on a credit report. And the state obligation doesn't address what you need to do when you take adverse action. It addresses the subject of what you need to do simply when you ask for someone's credit report. So the argument would be they don't relate to the same subject matter. The state one doesn't concern the federal one. They're different. It just depends how narrowly or broadly you define the subject matter. I think that's exactly right. I have two answers. First, to get to that narrow construction, I think this Court, the panel that decided Galper, would be shocked to hear that's how you do it. The subject matter, and this is clear from Galper, the subject matter is notice. Both statutes deal with notice. That's what this Court in Galper said you have to look at. And once you get to that level, this fine parsing of how they work is not required, number one. Number two, even the devil quotes scripture when it suits his purpose, to adopt Mr. Chateau's position, if the correct analysis is conflict analysis, there is a conflict. There is a conflict between the state law and the federal law, exactly what Your Honor just said, Judge LaValle. One regime says you always give notice whether you're taking adverse action or not. New York State says you're going to go pull a credit report, you give notice. The federal law says you give notice if you're taking an adverse action based upon what you did. It's very hard to understand how those . . . It's not really a conflict because one can perfectly well comply with the state statute without in any way interfering with compliance with the federal . . . But that's what's not required. But let me ask you something else that I hadn't considered. In relation to your answer to Judge Jacobs' question, is all this irrelevant in view of the plaintiff's failure to provide opposition to the argument that it only . . . Should we just rely on that essentially default with respect to the meaning of the state statute? And then would that mean we don't need to deal with preemption? I would think so, Your Honor. I would also think the argument I was prepared to deliver this morning was going to focus on a lot of anomalies, matters of hyper-technical issues of appellate practice. We would just be ruling not on the meaning of the state statute, but just that the Supreme Court . . . He abandoned the claim. . . . reached its decision based on the plaintiff's failure to argue something. Correct. We would say that was . . . And it's not just that you can tease that out of the record, Judge Radji. The language I read you in response to Judge Jacobs' opening question is Judge Forrest addressing that very subject . . . and making the exact point Judge Jacobs made. And that is, we made this argument below. He punted and she ruled against him on the basis of his failure to respond on the merits. All right. Similarly, let me just note before I sit. There are lots of things in this case like that. For example, Rule 60B. In his opening brief, there's no discussion at all of Rule 60. In his reply brief, there's a big argument that the Rule 60 motion was improperly granted. I think he waived that. The significance of that is this. I know we're not talking about that part of the case this morning. But whenever in this case, he's asked to say, where is all . . . where are all these facts? There are no facts here. I mean, Judge Forrest could not possibly have been more correct. She wrote a very careful, very thorough, very professional, very workmanlike opinion. And she opened by saying, this case never should have been brought. It's frivolous. What I was told for years were the facts are not the facts. This whole argument proceeds as though it's an appeal from a motion to dismiss under 12B.6 and not a Rule 56 appeal. This is put-up-or-shut-up time. And when the question was called, he had no facts. He just talks about things that are pages and pages of his brief without a single citation of the record. When he does point to the record, there are two things he points to frequently. One is the Attorney General's papers. Those aren't before this Court. That was the subject of his 60B motion. He asked her to take those into account and reopen the case, and she denied that motion. They're not before you. Right? And the other . . . Let's say something that may actually be before us. Okay. The general business law of New York 349, Judge Forrest dismissed that in part on the ground that there was no showing of reliance by the plaintiff. But New York Court of Appeals in Stuttman said that reliance is not an element. It's hard to imagine why it wouldn't be, but the New York Court of Appeals says it isn't. So is that an error that requires remand? Can I ask you a question? Reliance on what? Well, reliance on the deception. What deception? I don't know, but, I mean, there's a claim here . . . Your Honor . . . . . . for deceptive business practices, and I would assume . . . I would assume that binding somebody to a contract while forging their name to it sounds like a deceptive business practice to me. So the entire . . . Judge, I'm so glad you asked that question. The gravamen of this case, the entire basis, the sine qua non of this bogus lawsuit is the allegation. I think it's at 717, at A717. It's underscored in the Second Amendment complaint that defendants filed the civil court lawsuit knowing the lease was forged. First of all, defendants plural didn't file anything. The individual defendants didn't file anything. One defendant, one corporate defendant is the plaintiff in that action. Secondly, that allegation made in contravention of Rule 11 was not true when it was made. It was not true on summary judgment, and it isn't true today. And Mrs. Ritchie admitted that in her deposition, and she admitted it in her request to admit. She never told anybody that she claimed that signature was not hers until after, two months after the civil court action was filed. Every argument in appellant's brief assumes exactly the opposite of what I just said. It's counterfactual. If you assume that they sued her knowing it was false, then there's fraud, then there's this, then there's that. But if you correctly . . . And which corporate defendant would that be? I don't remember. It was NLS. NLS acts as the agent for LFG. LFG . . . It isn't your client, so . . . No, no, it is. They're all my clients, Judge. My point is simply as to the individuals who I also represent, they have just no business being here. I mean, he castigates Mr. Brown for not knowing anything about the collection business, and Mr. Brown testified two pages later, that's not my department. I don't do that. Can I finish my thought, Judge? Yeah. So if you . . . I mean, plaintiff assumes the most fundamental element of the case, which is that there was a fraud here, and then everything follows. His entire brief is predicated on that. You're saying that the forgery that we're required to assume is correct, that the forgery would have been done by the entity MME that the plaintiff initially dealt with and not by your clients who then succeeded. No, no, that happens to be true, but that's not my point. If I'm not being clear, let me try it again. It may or may not state a claim, it may be legally cognizable, maybe, I doubt it, but maybe, to sue someone on a contract which contains a signature you know to be forged. That's his theory of the case. That's what he pled. Everything follows from that. When I asked you, not facetiously, Judge, reliance on what? So he says in there, the court, when we made the argument under bridge, the Supreme Court said, somebody has to rely. He said, well, the court clerk relied when he issued the subpoena. Passing what else is wrong with that argument? If the court clerk was misled and relied, it was misled by and relied on the fact that the plaintiffs, that the plaintiff below in a civil court action filed an action knowing it was a forgery. It is now crystal clear, no one knew it was a forgery. No one knew. No defendant. Therefore, the defendant committed no fraud. Listen to this litany of things that are in his brief, all of which fall out if you understand this. Why does the deceptive act or practice have to be committed by your client if no reliance is required and if the victim, assuming she's a victim, has to spend money defending a lawsuit that has no basis and because the signature is forged, even if somebody else forged the signature? I'm not making the argument that somebody else forged the signature. That's not my point at all. My point is if you file a lawsuit with a signature on a contract that you know to be forged, his theory is it's a Hobbs Act violation, it's mail fraud, it's wire fraud, it's all the RICO predicates, everything else follows. That's his theory. Mrs. Ritchie admitted repeatedly in discovery that she never told anybody connected with the defendants, although she had ample opportunity to do so because they constantly called her up, which she castigates them for, of course. She never told anybody it was not her signature until two months after the civil court action. What that means is there is no false statement in the civil court action because no one knew it was a forgery. She's not the only possible source of the knowledge that it was forged. She's not the only conceivable source that they could learn. Your Honor, I agree, but the question is not whether she knew it. The question is did we know it. We didn't know it. That raises two questions. One, would your clients have known it because Mrs. Ritchie told her, and you've pointed us to the fact that she didn't tell anybody anything until much later, or could they have known it because they were the forgers? And my understanding, and please correct me if I'm wrong, is that you're saying no evidence to support that was adduced. Correct. Because she signed her lease application with another party. We'll call them the middle man. The middle man has a contract with your clients that says we're going to provide you with leases and we warrant that they will be validly signed and will indemnify you if they're not. Absolutely. And there's no evidence that your client ever originated any leases. So the circumstantial evidence only admits a middle man who warrantied the validity of the lease being involved in whatever forgery. I thought that's why there were two parts to your argument. Did I miss something? Everything you said, Judge Ritchie, is 100% accurate, and that's exactly the conclusion Judge Forrest came to for which she's criticized by my brother here. She concluded that the forgery, if it occurred, must have occurred at the middle man. That also is not in the record. If at all. There's no evidence to support an inference that your client originated it and therefore would have known of it for that reason. So this case ultimately comes back to Celotex, doesn't it? This is a Celotex kind of situation. It is summary judgment. It is Rule 56. The plaintiff, who has the burden on all of these issues, has to adduce evidence from which a reasonable jury could find in his favor. This plaintiff adduced no evidence whatsoever. Hyperbole, lots of chatter, lots of talk, lots of allegations, lots of, you know, wild things, lots of talking about other cases, other people, none of which is in the record. I started to say before, the only two places are the attorney general's papers, which I believe are not actually in the record. And the other thing he cites to a lot is a series of RFAs promulgated by him, requests for admissions, which my client never admitted to. They objected to them and they moved to strike. And Judge Forrest said in her opinion, I'm taking all that. I'm not going to rule separately on the motions to strike, but I will mentally keep in mind what is not appropriately before me. So it's a little murky. But certainly when he says X is a fact, Y is a fact, and he gives you an A site, I know your honors have looked at every single A site that he gave you. Those A sites are invariably to the questions he promulgated, the requests to admit. They're not to our responses. We, on the other hand, did exactly the opposite. We relied on Mrs. Ritchie's admission that she didn't tell anybody about the alleged forgery until two months after the civil lawsuit, civil court lawsuit. We gave you the page where we asked the question. We gave you the page where she admitted it. We gave you her testimony. I hate to sound pedantic, but if you carefully read the other side's briefs, both briefs, and you check every single citation, which I have done, there are enormous numbers of them where you scratch your head and you say it must be a typo. I don't get it. I mean, I passed the pages that are upside down, which I asked him to fix. But it's not there. There's no evidence. His entire argument is a reasonable jury could find whatever the validity of that mode of argument is on a 12B6 motion. That's just not good enough. It doesn't cut it on summary judgment. This is put-up or shut-up time. I believe it was Emma Lazarus who famously wrote, you know, give me your affidavits, give me your facts, you know, give me your record citations, and I will open the door to the golden courtroom. But fail to do that, and I'll slam the door in your face. And that's what Judge Forrest did. Correctly. Correctly. And she also said it was frivolous, and she also said it shouldn't have been brought, and she also said plaintiff has spent years misrepresenting to her what the case is about, right? Thank you. Thank you, Your Honor. We'll hear rebuttal.  They just finished telling, Your Honors, that they didn't know when they brought the civil court action that the lease was forged. Okay? Now, in September of 2014. What's the admissible evidence that would admit such a finding? At the moment, none, but let me finish this. Sorry, I didn't hear you. I said at the moment, none, but let me finish. At the moment, none. Let me finish this. Okay? Two things. Firstly, in September 2014, while this action was on, we produced an expert, not just Ms. Ritchie's testimony, but we produced an expert handwriting report saying that Ms. Ritchie, that is not Ms. Ritchie's signature. In September 2014, nine months later, in May of 2015, they asserted counterclaim based on very same document in the lower court. And he's talking about Rule 11? That's not the lawsuit that you're saying is the fraud. Right. Let me finish. Okay. Let me finish. That is absolutely correct. That is not the lawsuit that I'm saying is fraud. My point is, this company has got a practice of routinely filing bogus lawsuits without bothering to investigate whether they have a claim or not. I mean, the person who verified Ms. Ritchie's complaint in the city civil court, he said he didn't mean to validate the lease. Well, if this was routine and this was a common practice, wouldn't you have some evidence that they knew? I mean, this is the end of, you're saying you don't have any at the moment, but this is do or die because this is summary judgment.  In a situation like this, where a company has got a routine practice of defrauding people, it is not necessary that you have to prove that it picked this one guy in order to defraud him because it didn't pick that guy. It is defrauding everybody. And that is abundantly borne by the evidence that we brought out. We brought out evidence in 59 other cases. We don't consider it enough to allow suit in one instance that there have been similar actions in other instances. You've got to have some evidence here. And I left out one, what I think is undisputed fact when I cataloged some of the evidence with Mr. Cavalier. And that's, your client applied for a lease on a certain piece of machinery. And she got that piece of machinery. And she paid for it for a number of months on the terms of the lease that you're now saying is bogus. She returned it, as I understand the record, not because she was saying, I have no lease with you people, it's forged, but rather because she was experiencing personal difficulties maintaining the lease. Have I understood that correctly? Except in two respects, Judge. She returned it to the people that she thought she was leasing from. Right, but not because she was saying, I have no lease for this piece of equipment. No, she said, I have no lease with you guys, not at the piece of equipment. No, but when she returned the lease, she didn't disavow, when she returned the machine, she didn't disavow a lease to anybody. Because she didn't know this lease existed. What she thinks she was getting the machinery pursuant to what? Pursuant to the application she made to the third party. The application was for a lease. Correct. Okay. You know, at a minimum, there might be a quasi-contract claim here. And so I don't know how the lawsuit is a fraud if they've got a quasi-contract claim. Firstly, she thought it was a cancelable lease with those people. And these people come and set up a non-cancelable lease in New York. Let me point out another significant fact before my time's up, Judge. It is expired, but go ahead. If Your Honor turns to the record, there is a very significant fact. Number one, there was testimony that for every lease they get the original, they log in the original, there is a log which reflects it. There is a call log which reflects it. The receipt of the original and the entry of the original. None has been produced here, number one. Number two, they said they don't know how they got it . . . That's a discovery issue, right? Just bear with me, Judge. Bear with me for a minute. Not necessarily, Judge. It has significance in this respect. They have produced the lease from their records, okay? And they also produced the MME application from their records. The MME application has got a fax mark in it. It's got the merchant services fax mark in it. But the lease, the forged lease, has got no fax mark, A279. Look at the lease. So one doesn't have a fax mark. The other one does have a fax mark, which means this was not faxed by them. It was not faxed by them, meaning by the third party in California. Okay. We have your argument. Thank you. Thank you both. We'll resume. One more question, if I may. Go ahead. Do you contend that your papers on the summary judgment motion before the district court advised contained information showing that the defendants have a routine practice of filing fraudulent lawsuits? Yes. In such circumstances? Yes. And where do we find that evidence? In the understated statement of facts where we have referred to 59 other lawsuits and annexed them as exhibits where these people very well knew long before they brought a lawsuit that the person was contesting the validity of that lease. Is there a page we could look at for this? And how does a lawsuit without a judgment prove anything? I'm sorry? How does a lawsuit, the fact that there were 59 lawsuits without evidence of the judgments prove anything? No, no, no. Not without evidence of judgment. Without 59 lawsuits brought despite ex-facie proof that this was a bogus lease, this was a forged lease. They didn't care. They just brought the lease because nobody from California is going to contest a $3,000 lawsuit in New York City. It's cheaper for you. And that is what they expressly tell people, that it's cheaper for you to pay us off than to come and litigate in New York. And anybody who litigates, they drag it out. Would you tell us please, what Judge Jacobs asked you, what page do we find this information in your summary judgment papers? Okay. Okay. 112, 114. 9, 900. 974 through 992. Thank you. Thank you. May I just ask you, the first pages you cited, 112 through 114, are your statement of undisputed facts. Correct. And Mr. Cavalier said that they challenged those. Is that your position or do you take a different one? That's not true. Not these statements. Not those disputes? Not those statements, no. Okay. And the other pages are 924? To 992. 974 to 992. 924 to 972 is a variety of documents. I mean, it spans 30 pages. What is it you expect us to find in there? 924 to? 924 to 972 is? 974. 974. To 992. Okay. Thank you. That is the . . . I believe that's part of the Attorney General's petition. And we submitted that as circumstance . . . The Attorney General . . . The Attorney General and the lawsuit by the Deputy Chief Administrative Judge of New York City . . . You made an . . . The court did not receive that in evidence as I understand it. That is part of the 60B application. That's correct. That's not what I . . . It's not. What I asked you was what you had in the summary judgment. And I was answering that question. At 924 through the second one that I gave you. That is part of the summary judgment. I thought the business in the Attorney General's report was submitted with respect to an application, post-judgment application, to vacate the judgment for relief from the judgment. That is correct. Well, then it wasn't part of your papers on the summary judgment. No, no, no. The nine . . . My question was what did you submit to the District Judge on the summary judgment motion? Did you have anything before the District Judge showing a routine practice of fraudulent lawsuits? Yes. Those are the pages that I gave you earlier. The 974 is part of Plaintiff's Rule 56.1 statement that was given long before the Attorney General's lawsuit. 974. I mean, the pages are kind of back and forth. They should have come before the Attorney General's petition, but . . . I'm looking at these, and I have questions and concerns about it. But I'm still having problems understanding. If your client applied for a lease for certain machinery, gets the machinery, and then starts paying for it, why isn't that effective adoption of the lease? Of a lease she didn't even know existed? She applied for a lease. And the lease was to get machinery, and she gets the machinery. What do you think she's . . . what are her obligations at that point? And she pays for it. What are her obligations? She did not agree, Judge. She did not agree to a non-cancellable lease. She did not agree to a New York Forum selection clause. Those are the two material things that are extremely different between the two leases. That's critical. That may go to whether there was an agreement of a meeting of the minds on all the issues, and that includes the 48-month non-revocable term. But how does she think that she has no obligations at that point? She didn't say she had no obligations. She returned the machine. She paid the money. That's it. End of the story as far as she was concerned. What is the basis for that obligation other than the lease that she applied for? With the third party. Just because she signed an agreement with the third party doesn't make her liable to these people. Okay. Thank you. Thank you, both. Can I come back to your piece? I think it's a good direction of the question. Yes. I haven't heard everything you talked about. 993 and 17. Thank you, Mr. . . . 993 . . . 993 and 17. Okay. Well, we have a lot to read. Thank you, both. Well, reserve decision. The last case on calendar is Leyva v. Warden. It's taken on submission. Please adjourn court. Court is adjourned.